The People of Puerto Rico, Plaintiff and Appellee, *v.*
Pedro Márquez, Defendant and Appellant.

No. 11596. Argued December 13, 1947.—Decided May 19, 1947.

304

César Andréu Ribas for appellant. Luis Negrón Fernández, Acting Attorney General, and Joaquín Correa Suárez, Assistant Prosecuting Attorney, for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

Pedro Márquez was charged with murder in the first degree for the killing of Pedro A. Pagán. He was convicted by a jury of the crime charged and sentenced by the District Court of San Juan to life imprisonment. He moved for a new trial which was denied. Defendant appealed both from the judgment and from the denial of a new trial and alleges in his first assignment of error that the lower court erred in not permitting the jury to hear and consider the testimony of defendant's witnesses, Pedro Antonio Maysonet and Pedro Antonio Díaz.

The purpose of the testimony of these witnesses was to show that the crime was not committed by the defendant but by a third party named Pedro Huertas Torres. According to appellant, Pedro Huertas Torres made statements in connection with the death of Pedro A. Pagán in the presence of witnesses Maysonet and Díaz. The incident arose while Maysonet was testifying, and upon being examined by the defense, he answered as follows:

"Q. Who is this? A. Pedro Huertas Torres, known as Pedro el Malo.

"Q. Is this the person with whom you spoke on that day?

A. Yes, at Aguelín's house.

"Q. Who is Aguelín? A. An old woman who sells liquor.

"Q. Did you speak with him about the crime? A. Of Pagancito.

"Q. What did he tell you? A. He told me . . .

"Dist. Att'y: I object because it is hearsay.

"Q. What did Pedro Huertas Torres, known as Pedro el Malo, tell you in connection with the crime of Pagancito?

"Dist. Att'y: Do not answer. Objection.

"Judge: It is hearsay. Objection sustained.

"Defense: I am going to raise a question of law and we have no objection to the jury hearing it. In this case we ask that defendant be given an opportunity to show the jury that two other persons and not he participated in and caused the death of Pagán. We ask your Honor to think well and permit the defendant to bring this evidence.

"Judge: The Court shall permit the defendant to offer any evidence he wishes tending to show that it was not the defendant but those two other persons who committed the offense; but he has to do this through competent evidence and not through witnesses who come here and say that so-and-so told me this or that other thing. The Court has no doubt on this point and believes that under no circumstances it can permit a witness to testify that so-and-so told me I killed Pagancito. It is not admissible and the jury should only decide the case on the evidence offered here and it would place the district attorney at a disadvantage because he would not have the opportunity to cross-examine the witness. Objection of the district attorney is sustained.

"Defense: We have called Pedro Huertas Torres in order that he may be cross-examined.

"Judge: Then Huertas Torres should say what he knows.

"Dist. Att'y: I wish the jury to withdraw.

"Defense: I do not want the jury to lose any more time. Does the Court deny the reconsideration?

"Judge: Yes.

"Defense: Exception. It should be understood that witness Pedro Antonio Díaz would have been called to corroborate that he witnessed the conversation as to which Pedro Maisonet would testify and which testimony we cannot offer by order of the court."

We have no doubt that the evidence which appellant sought to offer was hearsay evidence and therefore properly

excluded. In *People* v. *Marchand*, 53 P.R.R. 640, a similar question arose and we decided, to quote from the syllabus, that: "Evidence to establish the affirmative defense of confessed guilt by another is inadmissible . . . . " See also *Donnelly* v. *United States*, 228 U. S. 243; 35 A.L.R. 441, and 48 A.L.R. 348.

■■ In his second assignment defendant urges that the lower court erred in failing to charge the jury as to the offense of voluntary manslaughter.

The transcript of the evidence does not show that defendant took any exception to the instructions delivered by the court to the jury or that he asked for any additional instruction. The question was raised for the first time in his motion for a new trial and, therefore, he waived any error that might have been committed in the instructions. *People* v. *Rosado*, 17 P.R.R. 417; *People* v. *Millán*, 66 P.R.R. 233. Furthermore, the evidence in this case, defendant having denied any participation in the crime charged, did not justify any instruction by the court as to voluntary manslaughter.

■■ In his third assignment he contends that the verdict of murder in the first degree is contrary to the evidence, it being entirely circumstantial and compatible with the plea of not guilty. We shall now examine briefly the evidence.

On December 2, 1944, Pedro A. Pagán, known as "Pagancito," was found dead in a room next to a café owned by him, situated in Barrio Obrero, Santurce. According to the testimony of several police and secret agents, who were in charge of the investigation, the body of the deceased lay on the floor in a pool of blood, with a towel tightly drawn around his neck and with contuse wounds on different parts of the head. According to the testimony of Dr. Llobet, who performed the autopsy, the towel which was tightly tied around Pagán's neck fractured the bone of the jaw and the cartilages of the larynx and the wounds in the head fractured the skull. The witness maintains that Pagán died either

as a result of the wounds on the head or by strangling; that his death took place eight or ten hours previous to the autopsy —which was performed at eleven o'clock in the morning— that is, at about one to three o'clock in the morning. Immediately after the secret agents and the district attorney took charge of the investigation and before moving or disturbing in any way, the state of things as they were found, two photographs were taken by an employee of the Insular Police, which appear as Exhibits 1 and 2 of the People. Next to the corpse several empty cardboard boxes were found spotted and stained with blood. The café also appeared in disorder, for the cash box was found on top of the refrigerator and some coins were scattered on the floor of the café. Later, in a place well out of sight, two bottles containing $130 in bills were found by the son of the deceased, who knew where his father kept the money. The evidence for the prosecution tended to show that the defendant asked Justo García for a quarter and after receiving it went to the café of "Pagancito," took a drink of rum, and paid one for Aníbal García Iguina. The defendant then asked "Pagancito" to give him another drink free, which the deceased refused to do. An argument ensued and the defendant left the establishment. This happened between half past seven and eight o'clock in the evening of December 1. Another witness for the prosecution testified that he lives in front of defendant's house in Hato Rey; that he saw when he arrived on the night of December 1 at about twelve o'clock midnight, intoxicated and noisy. The witness testified: "That night he was worse than ever. I have placed a light in the front on account of him and I half opened the window and saw him. He was wearing kaki trousers and brown leather boots, a striped shirt and a hat; his mother opened the door and he said: 'open up and do not bother me, I have just slugged someone up there . . .'."

The evidence further showed that on December 2, that is, on the day the deceased was found, the defendant went to

the ward of Bairoa, Caguas, to the house of some relatives whom he had not visited for many years, and that he was wearing kaki trousers, black shoes, and brown boots. He met Isabel Rodríguez and asked her for some clothes to change his own. She gave him a pair of pants and a shirt belonging to her brother; that the defendant changed clothes and gave his to Isabel to be washed; that while she was doing it she noticed that the shirt and pants had bloodstains. The defendant went away and on the following Saturday, December 9, he returned to the ward of Bairoa with a box containing some clothes and bed linen, a brush, mirror, tooth paste, tooth brush, and a hammer. This box was similar to the cardboard boxes appearing in the room of "Pagancito" and it also had stains as of blood. On this day the defendant again changed his clothes and took the hammer wrapped in paper with him. Then the witness delivered to the district attorney the clothes which defendant had borrowed from her and she identified them on the day of the trial as well as defendant's clothes which she had washed. She further testified that defendant's shirt and pants were stained in the front and that she knew they were bloodstains because she had cut herself and being a washerwoman knows that when bloodstains dry they become black.

On December 23 defendant met Víctor Villegas Márquez at a party in Caguas. They spoke for a while and according to Villegas, it happened that: "We stayed at the party and stood under a tree and then Pedro Márquez asked me: 'what brought you here?' and I told him: 'I am running away from some cases', and he told me 'I am running away from a case because I have been accused of having killed Pagancito.'" These statements of the defendant were heard by Ignacio Velázquez, another witness for the prosecution, with the difference that the latter heard defendant say: "That is nothing, I am also running away from several cases in the court of Río Piedras and from one that I killed in Barrio Obrero."

At the end of the party and about seven o'clock in the evening, Villegas and the defendant left for the ward of La Muda, Caguas, to visit a friend of Villegas named Patria Mercedes López. They arrived at about half past seven or eight o'clock in the evening, intoxicated and very noisy. The defendant told Patria López, among other things, that: "I am the masked man to whom 'El Imparcial' refers who killed Pagancito, the merchant of Barrio Obrero, and I am not giving myself up until I kill the boy who accused me." A little later the police, who had been informed that Villegas was there, arrived and upon arresting Villegas who was running away because he was charged with several crimes of assault to commit rape, they were taken to police headquarters at Guaynabo. In the police blotter it was stated that the defendant was arrested for breach of the peace. A few days later he was charged with the killing of Pagán.

Defendant's evidence tended to show that on the evening of December 1, defendant was living in Hato Rey and went to bed at nine o'clock of that same day and got up at six o'clock in the morning of December 2 to go to work in a small café belonging to one Chano situated at Stop 25. That he worked for a whole week at the end of which he left the job and went to the ward of Bairoa, Caguas, on December 9, and not on December 2, as testified by the witnesses for the prosecution, and there he worked for one week.[1] He tried to prove also that the crime had been committed by Pedro Huertas Torres, but the lower court rightly refused to receive hearsay evidence to that effect. Melitón Morales Guzmán also testified that at about eleven o'clock in the evening he saw two men leaving the alley on the side of Pagán's café, that one was Ramón Pagán, the decedent's brother and the other Pedro Huertas Torres. Defendant denied that he had gone to Pagán's café on the night of the latter's death or

---

[1] The evidence for the prosecution negatived the fact that defendant had worked in said ward.

that he had killed him. He also introduced evidence to impeach the veracity of several witnesses for the prosecution.

The evidence in this case was circumstantial. Appellant urges that it is not sufficient to support the verdict because it is compatible with any reasonable theory of innocence and because the *corpus delicti* was not proved. We do not agree with appellant. The *corpus delicti* was established by direct evidence: the testimony of Dr. Llobet which showed that the death was caused by strangulation or by a fracture of the skull and the identification of the corpse of Pagán. The circumstantial evidence connected the defendant with the commission of the crime in such a manner that it rendered it incompatible with any reasonable theory of innocence.

This evidence reveals that the defendant went to Pagán's café on the night the crime was committed and had a discussion with him because of the rum that he refused to give him on credit; that later, on that same evening, he was heard to have said while intoxicated, that he had "slugged someone up there"; that next day he went to the ward of Bairoa, Caguas, to visit some relatives and that the clothes which were washed had bloodstains; that although the defendant alleged he had been working, the evidence for the prosecution contradicted this fact; that the defendant spontaneously and voluntarily admitted at different places and to different persons that he was running away from the charge made against him of having killed Pagán and that he was the masked man who appeared in "El Imparcial" who had killed the merchant in Barrio Obrero and that he would not give himself up until he killed the one who had accused him. With what reasonable theory of innocence can this evidence be compatible? The jury, duly charged by the court, believed that there was no such compatibility and, in our opinion, the verdict of conviction is supported by the evidence. It devolved on the jury to determine the credibility of the witnesses who testified that they had heard extra-

judicial admissions made by the defendant and also whether from the facts embodied in said admissions,[2] taken together with other circumstantial evidence, they could determine, beyond a reasonable doubt, the guilt of the defendant. This they did by believing the witnesses for the prosecution and we are not justified in disturbing their conclusion. The error assigned was not committed.

Appellant urges that the court erred in permitting the district attorney in his address to the jury to mention robbery as the motive for the crime when either, in the information nor in the evidence introduced at the trial was it alleged or proved that the murder had been committed by the defendant in order to commit robbery or an attempt to do so.

We are not in a position to determine whether the error assigned was committed, inasmuch as the record does not contain the address of the district attorney to the jury. The party who alleges an error must place the appellate court in a position to determine the same. *People* v. *Cabrera,* 59 P.R.R. 133. Since there is no showing in the record revealing the nature of the statements of the district attorney, we cannot consider this assignment.

It is further contended that the court erred in admitting in evidence photographs of the deceased, marked Exhibits 1 and 2 of The People.

These photographs were taken by an employee of the police by order and under the supervision and direction of Mr. Juan Adames, Chief of Detectives of San Juan. As revealed by his own testimony, both photographs represent what he saw there on the morning of the investigation before changing or disturbing anything as it was found.

A photograph proved to be a true and faithful representation of the person, place, or thing which it purports to represent, is admissible in evidence and competent to prove

---

[2] See 2 Wharton Criminal Evidence, § 649, et seq., as to the evidentiary value of admissions.

anything as to which a witness may give a verbal description pertinent and material thereto. 23 C.J.S. 51, § 852. Underhill, Criminal Evidence, p. 157, § 117; *Illanas* v. *González,* 51 P.R.R. 779.

It having been shown by the evidence for the prosecution that the photographs are a true representation of the state of things as the same were found in the room and café of the deceased, and the defense having failed to offer any evidence in rebuttal, the lower court did not err in admitting said photographs in evidence.

■ Lastly, it is urged by appellant that the lower court erred in denying his motion for a new trial.

We will only consider those grounds of the motion for a new trial which have not been already discussed and decided in this opinion.

Defendant alleged in his motion for a new trial that "nowhere in the evidence introduced by the district attorney is the element of malice, aforethought or the deliberate intent to kill Pedro A. Pagán present. . . ." Appellant is wrong. The circumstances under which the killing of Pagán was committed plainly established the malicious intent and premeditation with which it was perpetrated. We know that Pagán was struck with a blunt instrument several times on the head, fracturing the skull, and that he was also strangled with a towel. The evidence offered by the People is sufficient to establish all the elements of the crime of murder in the first degree.

■ He also alleged in said motion that "he was prejudiced by the special circumstance that juror Mr. Braulio Caballero was constrained to stay in the jury notwithstanding the fact that he announced at the time of the drawing out that he had to sail for the United States on May 6, 1945, and that this was worrying him", and that "by this fact and in order not to displease said juror in particular,

he was precluded from presenting the testimony of Feliciano Rodríguez Rivera, Juan Rodríguez Rivera known as Juan Bendito, Juan E. Adames, Asst. Chief of Detectives, and Demetria Márquez, defendant's mother, which witnesses would have testified in support of his alibi and other particulars of the theory set up by his counsel."

The record does not reveal the proceedings had in the lower court in connection with the constitution of the jury. We cannot consider this point for the same reason that we did not consider the fourth assignment of error, *supra*. Furthermore, the defendant had an opportunity to reject juror Caballero and the record does not show that he did so. We have held that a defendant should not keep silent when at the trial an irregularity takes place which he considers prejudicial to his rights and wait until the end of the trial and subsequently on appeal, if convicted, assign such irregularity as error. *People* v. *Arroyo, ante,* p. 33.

If the defendant chose not to present the aforesaid witnesses, he did so voluntarily for there is no showing in the record that he offered to present them and his right to do so was denied. It was incumbent on the accused to introduce the necessary evidence in support of his defense. If he chose to dispense with the testimony of some of his witnesses, he cannot complain now that it prejudiced him.

Lastly, appellant contends that the information charged him only with the commission of murder in the second degree. A mere reading of the information shows that it contains all the elements inherent to the crime of murder in the first degree.

The motion for a new trial was rightly denied by the lower court.

The judgment below is affirmed.

Mr. Justice Snyder and Mr. Justice Marrero did not participate herein.